(31 Misc. Rep. 605.)

ST. REGIS PAPER CO. v. SANTA CLARA LUMBER CO. et al.

(Supreme Court, Special Term, St. Lawrence County.   June, 1900.)

1. CONTRACTS—RESCISSION. .

A lumber company contracted to furnish a specified amount of wood to plaintiff, a paper mill, for 10 years, and plaintiff agreed to make advances from time to time, at the lumber company's request, not to exceed the annual cost of cutting and delivery.   The lumber company further agreed not to sell any lumber to other parties so as to prevent its fulfillment of the contract.   During the first year it expended about $40,000 in getting the wood ready for delivery, and plaintiff advanced only $25,000, though more was requested.   The lumber company therefore sent a written rescission of the contract to plaintiff, offering to refund the amount advanced, and contracted to sell a large quantity of wood to other parties. *Held*, in a suit for a temporary injunction to prevent the sale, that plaintiff's failure to furnish more than $25,000 would not justify a total rescission of the contract, since the amount of advance required was not

definite, and since the lumber company was not the sole judge of the reasonableness of the amount requested.

2. INJUNCTION—RESTRAINING BREACH OF CONTRACT.

Where a lumber company contracts to sell an agreed amount of wood to plaintiff each year for 10 years, and not to sell wood to other parties so as to prevent fulfillment of the contract, a temporary injunction, preventing a sale to other parties will be granted, if plaintiff furnishes general security, and in addition gives a satisfactory undertaking to pay the balance due under the contract on the annual cut, and any additional value, in case it should not succeed.

Motion for temporary injunction by the St. Regis Paper Company against the Santa Clara Lumber Company and another. Granted on terms.

Elon R. Brown and Henry Purcell, for plaintiff.
Henry W. Jessup, for defendants.

RUSSELL, J. The plaintiff seeks a temporary injunction to prevent the sale or disposition by the Santa Clara Company to the Brooklyn Company or any other person of the lands or pulp wood on some 32,000 acres of land in Franklin county, in this state, so far as such sale or disposition will disturb the power of the former company to fulfill its contract with plaintiff. That contract is an unusual one, made on the 29th of August, 1899. The Santa Clara Company agrees thereby to sell and deliver to the plaintiff each year for 10 years, beginning June 1, 1900, from 11,000 to 13,000 cords of pulp wood, at the rate of about 1,200 cords per month for 10 months per year, at $9 per cord. This seller was not required to deliver in the aggregate more than the wood to be obtained from its 32,000 acres, nor any in place of that destroyed by fire, nor from any lands taken by the state, they being situate within the forest preserve, but the damages sustained by the plaintiff in case of such condemnation should belong to the plaintiff. The seller also agreed not to sell any of said lands or pulp wood during the term of the contract so as in any way to jeopardize or prevent its fulfillment and performance of the contract. The equity of the plaintiff in the contract was declared assignable. The plaintiff entered into this contract in order to have a current and continuous supply of wood for its pulp and paper mill at Wilna, Jefferson county, N. Y., which mill it began building shortly prior to the contract, and which is now nearly finished, at a cost of about $1,000,000; and plaintiff needs the cut of some 11,000 cords made the past season under the contract for its initial operations, and the yearly supply hereafter, on account of its reliance on the contract, and the constant diminution of the general supply of wood and consequent advance in price. Nor does it appear that the plaintiff can now begin its work of paper making, or utilize its plant for the coming year, for want of pulp material, unless it accepts the offer of the Santa Clara Company, as to the present season alone "to sell" to it 13,000 cords at $7.50 per cord, delivered at Tupper Lake Junction; the plaintiff to pay the cost of transportation to the place where under the contract the seller was to deliver the wood. This would be a new bargain, and not a delivery in pursuance of the contract,

and might be a waiver of the right to enforce that contract. The plaintiff has also advanced some $25,000 upon the purchase price of the present season's cut, to partially provide for the expense of cutting, barking, and hauling, under a provision of the contract hereafter referred to.  Up to April 12, 1900, the seller recognized this agreement to be of binding force upon it, and cut wood enough upon its tract to comply with its burden of obligation for the season of 1900.  Assuming it to be still in force, we find an executory agreement operating upon property identified up to a certain quantity, and a contemplated transfer of that property to the plaintiff by future deliveries, not for sale by the plaintiff, but for uses forming a part of the plaintiff's daily business for 10 years in the future. We observe a prohibition of the seller to dispose of the property to others, and an exclusion of the power of others to buy.  No present title to definite standing trees passed by the contract; but, assuming that to be done in its faithful performance, which equity regards as done in judging of equitable interests, title would flow continuously to the vendee for conversion into a different commodity contemporaneously with observance of the spirit of the agreement by both parties.  It would be difficult, in case of a breach, to forecast the adequacy of an action which should presently ascertain the damages to the plaintiff in the uncertain future of 10 years, or the effectiveness of one begun each year for those annually sustained, even if assurance could be given of the continued ability of the seller to respond; and it may be fairly argued that the parties did not contract with reference to a vendible thing which could be replaced at current market rates, but contemplated the absorption into the product of plaintiff's work day by day, for 10 years, of a necessity for that work and product.  But the Santa Clara Company maintains with earnestness that, whether the plaintiff would have any equitable rights under the contract, if in force, or not, that contract has no longer any binding power, because of plaintiff's default, which has justified the act of rescission performed by the Santa Clara Company, and that it has the lawful right to sell the land and wood, under which right it sold the Brooklyn Company a portion of the property.  It bases the right of rescission upon the following clause in the contract:

"Party of the first part shall commence to cut wood on or about the 15th day of August of each year for the following season's supply.  Party of the second part shall make such advances of money to party of the first part as it may request during the progress of the work, but party of the second part need not advance more than approximately the cost of work done."

Counsel for defendants urges with force that these provisions were inserted to relieve the Santa Clara Company from the burden of financing the cost of cutting and delivery, which formed over one-third the purchase price, and that the continued performance of this obligation by plaintiff was essential to the right of plaintiff to claim the further execution of the contract, and that its nonperformance justified rescission.  It is true that a party to a contract is not obliged to continue to perform where the other party refuses to comply with concurrent obligations.  But the right to stop further delivery to a de-

faulting party is one thing, while rescission or complete cancellation of interest ab initio is a very different privilege. The latter would be a forfeiture of a property interest, never favored, except where clearly intended by the agreement. Even then, where retention of the sums paid before default is imbedded in the contract to sell land, subsequent tender gives an equitable right to specific performance, unless the situation has changed so that restoration would injure the vendor beyond the contemplated effect of the contract. The right of rescission must depend on the gravity of the interests conveyed, and the injury received by the default. From August, 1899, to May, 1900, the Santa Clara Company expended about $40,000 in getting ready for delivery over 11,000 cords of wood to plaintiff. Beginning with October 7, 1899, requests were made to the plaintiff to furnish moneys for the cost of such preparation. Only about $25,000 were furnished, and on the 12th of April, 1900, a written rescission was sent by the Santa Clara Company for the default in not paying all the sums requested from time to time, and the amount advanced tendered back, with interest. As the contract had been recorded, the rescission was recorded, also. By agreement dated April 10, 1900, the sale to the Brooklyn Company of about 16,000 acres of the land was made, with the reservation that the latter company should sell to the Santa Clara Company the pulp wood thereon at $1 per cord on the stump. The Santa Clara Company still has this season's cut on hand, with the power to supply the plaintiff under the contract, but refuses to do so, and claims the right to sell to others. Doubtless this company had the right to require the plaintiff to furnish the approximate cost of cutting and delivery currently, as needed; but that cost was not a matter of certain calculation in advance, nor was it the sole judge of the reasonableness of the amounts requested. The contract does not make full and prompt compliance with requests for stated sums, to provide for indefinite outlays, so fundamental as to justify rescission in toto because the plaintiff did not acquiesce by payments in strict accord with those requests, whatever effect such noncompliance might have upon the obligation of the Santa Clara Company to fill a delivery of at least 11,000 cords this year. The deficiency of $15,000 under the terms of a contract, involving the payment of $100,000 or more per year for 10 years, was of not sufficient weight to work a freedom from all obligation under that contract.

Nor do I think the request for an injunction must be denied because the plaintiff has recorded its contract and a lis pendens in this action. It may be doubted whether these records are effective to prevent title in standing timber not separated or distinguished by identification, going to a stranger whose rights of purchase, as exercised, would lead to disturbing occasions and differences in the attempted effort of plaintiff to yearly secure the wood contracted for. Nor could any notice shift upon the shoulders of others the personal burden of cutting, rossing, hauling, and delivering, as assumed by the Santa Clara Company. Nor do I think the court will be shorn of its power to adjudge the duties of the respective parties for the future because the deliveries and payments extend over 10 years. No constant inspection of the court will be required if the obligations

of each are defined with precision in the final judgment, in case plaintiff succeeds, and we will not assume the danger of a substantial deviation by either before the emergency comes.

The plaintiff, on this application, comes into court with a contract securing large property interests. I cannot, in advance of a more perfect hearing than that afforded by affidavits, adjudge those interests to be forfeited, or give the permission of the court to the defendants to partially destroy the efficacy of that contract, so that possibly the whole contract may be valueless. Yet the defendants should be protected from loss, so that in case of success the court should not have mistakenly worked them serious injury. In addition to the general security upon temporary injunction, the plaintiff should give a satisfactory undertaking to take the present cut and pay the balance at $9 per cord, and any additional value found, in case it does not succeed, without prejudice to defendants' claimed rescission, so that the Santa Clara Company may not suffer loss by depreciation in quality from exposure or otherwise, and also to take, on similar terms, during litigation, the future cuts, so that this company may reasonably provide for the current efficiency of its plant, and utilize its property as though not disturbed by injunction. Prepare and serve proposed order, and I will settle its terms after receiving the suggestions of both parties.

Ordered accordingly.